## PITSER v. McCREERY.

[No. 21,392. Filed April 29, 1909. Rehearing denied October 7, 1909.]

1. APPEAL.— *Term-Time.— Parties.— Highways.*—Where appellant filed a highway petition making appellee and others parties thereto, and appellee alone defended, a term-time appeal taken by appellant should not be dismissed because none but the appellee was made a party to such appeal. p. 665.

2. TRIAL.—*Special Findings.—Conclusions of Law.—Amendments.* —The trial judge, at any time during the term, may revise his special findings and conclusions of law. p. 665.

3. HIGHWAYS.— *Twenty Years' User.— Statutes.*— Under §7663 Burns 1908, Acts 1905, p. 521, §15, providing that the boards of commissioners shall ascertain and record all highways which have been used as such for twenty years, it is not material whether such highways have been used with the consent, or over the objection, of the landowners. pp. 669, 674, 675.

4. HIGHWAYS.—*Dedication.—User.*—Where a dedication of a highway is shown, proof of user is superfluous. p. 670.

5. HIGHWAYS.— *Twenty Years' User.— Prescription.— Statutes.*— Under §7663 Burns 1908, Acts 1905, p. 521, §15, requiring boards of commissioners to ascertain and record all highways used as such for twenty years, proof of a prescriptive right is unnecessary, twenty years' use being the sole test. p. 671.

6. HIGHWAYS.—*What Are.—Use.—Repairs.*—A public highway is a way open to the use of all; and it is not necessary that it be traveled extensively, or that it be kept in repair by the proper authorities. p. 671.

7. HIGHWAYS.—*User.—Evidence.*—Evidence showing that a landowner fenced a way through his land, which the public travel ed

for over twenty years, that such owner at various times obstructed such way by building gates and fences for his own convenience, the public continuing to use the way, requires a finding that such way is a public highway. pp. 672, 676.

8. HIGHWAYS.—*User.*—*Contest of Right.*—After a road has been used by the public for twenty years, it does not cease to be a public highway because a landowner afterwards contests the public character of the way. p. 674.

9. HIGHWAYS.— *Width.*— *User.*— Highways established by twenty years' use (§7763 Burns 1908, Acts 1905, p. 521, §15) shall retain the width existing at the time of the end of such use. pp. 674, 678.

10. HIGHWAYS.— *Easements.*— *Statutes.*— The easement statute (§6178 Burns 1908, §4321 R. S. 1881), providing that twenty years' adverse use of a way shall give the user an easement, does not apply to the highway statute (§7663 Burns 1908, Acts 1905, p. 521, §15), providing that a way used by the public for twenty years shall constitute a public highway. p. 677.

From Delaware Circuit Court; *John W. Macy*, Special Judge.

Highway petition by Samuel P. Pitser, against which John W. McCreery remonstrates. From a judgment for remonstrant, the petitioner appeals. Transferred from Appellate Court under §1393 Burns 1908, Acts 1907, p. 237, §2. *Reversed.*

*Walter L. Ball* and *George H. Koons*, for appellant.
*Orr & Orr*, for appellee.

MYERS, J.—Appellant presented to the Board of Commissioners of the County of Delaware a petition filed in the auditor's office August 14, 1906, under §7663 Burns 1908, Acts 1905, p. 521, §15, to have ascertained, described and entered of record a certain described public highway alleged to have been used for twenty years. The petition alleged that the highway passed along and upon the land of the petitioner and also the lands of appellee and others. Appellee appeared before the board of commissioners and filed an answer of general denial to the petition.

Upon a hearing the board found in favor of appellant, and

entered an order in accordance with the prayer of the petition, from which order appellee appealed to the Delaware Circuit Court, where the cause was tried without a jury, a special finding of facts made, conclusions of law stated, and judgment rendered against appellant, from which judgment he appeals, assigning errors upon the conclusions of law, including assignments of errors upon the action of the court in withdrawing its findings and conclusions and amending the findings and conclusions of law.

The same proceeding was before this court between appellee, then appellant, and another, in *McCreery* v. *Fallis* (1904), 162 Ind. 255.

The court made and filed its special findings and conclusions of law July 22, 1907, to which conclusions of law appellant excepted, and on July 29, 1907, the court on its own motion withdrew the findings and conclusions, and filed amended findings and conclusions of law.

Appellee has filed a motion to dismiss the appeal on the ground that the other landowners, over whose ground the highway passes, have not been joined as appellees.

1. That motion must be denied. No person except appellee resisted the petition or proceeding at any stage. The appeal was taken in term, and it was not necessary that any person be joined as appellee, other than the party who was adversary, and who alone recovered judgment. The others are parties to the record, but not to the judgment, and in such case they are not necessary parties to the appeal. *Keiser* v. *Mills* (1904), 162 Ind. 366; *Small* v. *Hammes* (1901), 156 Ind. 556; *Lowe* v. *Turpie* (1897), 147 Ind. 652, 37 L. R. A. 233.

Appellant complains of the fact that the court withdrew its special findings and conclusions, and refiled them with some additions to the findings. This action appears

2. to have been taken at the same term at which the first finding was made, and the rule is settled that trial

courts have this right, and the action was not error. *Royse* v. *Bourne* (1897), 149 Ind. 187; *Thompson* v. *Connecticut, etc., Ins. Co.* (1894), 139 Ind. 325, 349.

We append a plat of the locality:

3 – 2 2 – 9

The findings show that one Woodring in 1878, and for many years prior thereto, and up to about the year 1900, was the owner of, and resided upon, the northeast quarter of section three, his residence, with barns and other buildings, being located about forty rods east and sixty rods south of the northwest corner of the quarter section, and fronted on the way in question. Appellee, in the year 1878, and for many years prior thereto, and ever since, owned and resided on the east half of the northwest quarter of the section, his residence, with barns and other buildings, being located about sixty rods south, and twenty rods west of the northeast corner of his land, and fronted on the way in question. For more than forty years prior to August 14, 1906, the way was opened and fenced on both sides from the east to the

west line of the Woodring land, varying in width from nine-teen to twenty-five feet, and opened upon a public highway at its east end, and people had residences along it, and they and the public generally traveled it, and it was the only means of ingress to and egress from the residences on the line. In the year 1878 appellee made a roadway, fencing it on both sides, from a point midway of his west line, wholly on his own land, north about one hundred and seventy-five feet, and thence east about sixty rods to his residence. This way was constructed for his personal convenience, and fur-nished the only way of ingress to and egress from his land. The north and south portion of said roadway, when first opened, was about fourteen feet wide, and connected with a gravel road. In 1886 he increased the width for his own convenience to sixteen and one-half feet, and fenced it on both sides, and thereafter increased the width to twenty-four feet. Residences have been built and have existed for more than twenty-seven years along such way, from the east to the west end thereof, which furnishes the only way of ingress to and egress from them. In the year 1878, after opening the west end of said roadway, as herein shown, appellee opened the way east from his residence to his east line, and fenced it on both sides, the width being about twenty-one feet at the east end. At about the same time Woodring extended the way north on his own land, fencing it on both sides, a dis-tance of about one hundred and fifty feet, where it connected with the old way running east, and thus produced a continu-ous way from the east line of the Woodring land to the west line of appellee's land, and from that time until the filing of the petition herein, a period of twenty-seven years, the way, opening at both ends upon public highways, was open, and was fenced on both sides throughout its length, and fur-nished the only means of ingress to and egress from the resi-dences located along such way. It had a well-worn, well-defined and well-beaten track from end to end, made by the travel over it of the public and the persons residing along

the way. The public generally has continuously traveled the way, at its pleasure, in wagons, buggies, vehicles, on foot, and on horseback as it desired, without let or hindrance from the landowners, except for the obstructions hereafter named. From 1881 to 1886 Woodring erected, and suffered and permitted to be erected, fences, gates and bars at different places and some distance apart, making pens and enclosures in parts of the way, in which he kept and fed stock for weeks at a time, and travelers on the road laid down, passed through, and laid up the fences, and opened the gates and passed through; but it is found that these obstructions were not placed in the road for the purpose of interfering with travel, but for the personal convenience of Woodring. In October, 1880, Woodring objected to the hauling of gravel over the road, on the ground that it was a private way, and hauling would cut it up, but he permitted the returning empty wagons to be driven back over the road. From 1882 to 1892 appellee frequently and repeatedly obstructed the way on his own premises. In 1887 he placed logs so as to occupy one-half the way, where they remained a number of years. In 1885 he dug a ditch four and one-half feet deep, and three feet wide across the way, which was suffered to remain open two or three weeks, during which time teams and vehicles could not cross the way. In 1887 he placed rails on and across the roadway for about forty rods of its length, during which time vehicles could not pass. During the years 1882 to 1892, he erected fences and gates on and across the way, and maintained them for weeks and months at a time; these fences and gates were placed so as to form pens, in which to detain and feed stock, and these obstructions interfered with, interrupted and hindered travel over the way, but it is found that they were so placed for his own convenience and not for the purpose of obstructing travel. On August 10, 1900, one Fallis and others, grantees of Woodring, filed a petition to have such way ascertained, described and recorded as a highway by twenty years use. That pro-

ceeding was reviewed in *McCreery* v. *Fallis* (1904), 162 Ind. 255, and remanded to the Delaware Circuit Court, and was dismissed for want of prosecution, June 6, 1906.

On December 8, 1901, appellant became the owner of the fifty-eight acres, heretofore described. In July, 1906, appellee erected wing fences and gates, one at each end of the way, on his own land, which appellant tore down and removed the same day, or the day following. At the time of appellant's purchase, he lived eighteen miles from the locality, and until a few days prior to filing the petition herein he had no notice or knowledge of the claim of appellee that the way through his land was not a public highway. His purchase included the portion of the Woodring land on which the Woodring residence was situated, and upon which way it fronted, and in which he has since resided, and there was no other means of getting to or from such residence from the west.

The court concluded from the foregoing facts that the way was not a public highway, and that the petitioner was not entitled to have it declared and recorded as such, and that appellee should recover costs. The correctness of these conclusions is the only question presented. Under the statute but one question is presented, and that is, Has the road been used as a highway for twenty years? §7663 Burns 1908, Acts 1905, p. 521, §15. If it has, the statute fixes its status as a highway, and it is wholly immaterial whether the use has been with the consent, or over the objection of the landowner. *Southern Ind. R. Co.* v. *Norman* (1905), 165 Ind. 126; *Strong* v. *Makeever* (1885), 102 Ind. 578, 584; *Green* v. *Elliott* (1882), 86 Ind. 53; *Gillespie* v. *Duling* (1908), 41 Ind. App. 217; *McClaskey* v. *McDaniel* (1906), 37 Ind. App. 59; *Brown* v. *Hines* (1896), 16 Ind. App. 1, 3; *Louisville, etc., R. Co.* v. *Etzler* (1892), 3 Ind. App. 562. It is not a question of a common-law dedication, or a way strictly by prescription, though analogous to the latter. *Pittsburgh, etc., R. Co.* v. *Town of Crown Point*

(1898), 150 Ind. 536, 547.    It is a statutory highway, by twenty years' user, irrespective of all other methods of creating highways.    It is a highway created by statute.

If a highway arises by dedication, user for twenty years is not essential.    A highway arising by prescription strictly, if highways can properly be said to arise by prescription, 4. involves the question of an adverse use, but this statute involves neither of these considerations, and this furnishes the reasoning of the cases, that it is immaterial under this statute, whether the use is with the consent, or over the objection of the landowner, and in either event if the use exists for the statutory period, the status of the road is fixed as a highway.    "The statute does not affect a remedy merely, but establishes a right."    *Strong* v. *Makeever, supra.* "User for twenty years vests an indefeasible right in the public."    *City of Fort Wayne* v. *Coombs* (1886), 107 Ind. 75, 79, 57 Am. Rep. 82.    "The law makes the lapse of time sufficient, without any other evidence."    *Ross* v. *Thompson* (1881), 78 Ind. 90, 98.    "When a way has become a public highway by user, it is such regardless of any question of public utility."    *Washington Ice Co.* v. *Lay* (1885), 103 Ind. 48, 55.    "Under the issues joined on this petition, it was immaterial whether there had been any dedication or not, or any attempt to lay it out.    It would become a highway and appellees would have just as great a right to the relief asked in case the highway, if the use had been without the consent, or over the objection of the adjoining landowners, as if it had been dedicated by them, if it had been continually used as such for the twenty years."    *McKeen* v. *Porter* (1893), 134 Ind. 483, 489.

In the case last cited it was held that evidence of opening and paving the way, was admissible as tending to show an opening for public use, and might tend to show dedication to the public use, yet the user must be shown, under the statute in question.    The way does not arise from dedication, but from the user under this particular statute, under which the

claim is made, and dedication or the intent of the owners is unimportant. *Schwerdtle* v. *Placer County* (1895), 108 Cal. 589, 41 Pac. 448; *LeRoy* v. *Leonard* (1895), (Tenn.), 35 S. W. 884; *Smith* v. *State* (1851), 23 N. J. L. 130; *Lemon* v. *Hayden* (1860), 13 Wis. 177.

If the consent or objection of the landowner is equally immaterial in creating the way, it must be evident that no question of common-law prescription strictly arises, because adverse use is of its essence, unless it can be said that use, over objection, shows the adverse claim of the public; but that will not do, for, if that were so, use by consent could never ripen into a right or establish a highway under this statute; and it is equally certain that the question of dedication is not an element in the consideration, but the statute fixes the status of the way, irrespective of prescription or dedication. *Speir* v. *Town of New Utrecht* (1890), 121 N. Y. 420, 24 N. E. 692.

Use then is the sole test; but what character of use? Manifestly the use which the statute defines; use as a highway. What is use as a highway? "A public road which every citizen of the State has the right to use for the purpose of travel thereon." *Board, etc.,* v. *Castetter* (1893), 7 Ind. App. 309. See, also, *Wild* v. *Deig* (1873), 43 Ind. 455, 458, 13 Am. Rep. 399. "A passage open to all the citizens of the State, to go and return, pass and repass, at their pleasure." *Morse* v. *Sweenie* (1884), 15 Ill. App. 486, 492. See, also, *Starr* v. *Camden, etc., R. Co.* (1854), 24 N. J. L. 592, 597. " 'Every thoroughfare which is used by the public, * * * whether it be a carriage way, a horseway, a footway, or a navigable river.' " *Packet Co.* v. *Sorrels* (1887), 50 Ark. 466, 8 S. W. 683. See, also, *Morgan* v. *Reading* (1844), 11 Miss. 366, 406. "Every kind of public way, common to all citizens, whether a footway, a horseway or a cartway, or a way by water." *Heyward* v. *Chisholm* (1858), 11 Rich. Law (S. C.) 253. Neither is it a question of the frequency of use, little or much used, or as to

the number of users. If it is free and common to all who have occasion to use it, it is a public highway. Elliott, Roads and Sts., 7; *Louisville, etc., R. Co.* v. *Etzler, supra; Village of Grandville* v. *Jenison* (1898), 84 Mich. 54. Under a statute similar to our own, it was held in *Speir* v. *Town of New Utrecht, supra,* that the user creating the easement must be like that of highways generally. It was also held that "the way must not only be traveled upon, but it must be kept in repair, or taken in charge, and adopted by the public authorities." This, however, is not the rule in this State, and our decisions have made a distinction between dedication, in which the elements of intention and acceptance are involved, and a statutory highway by user. In the New York cases this distinction seems to have been overlooked. We would not be understood as declaring, even under this statute, that the use need not be under a claim of right. But, in line with the decided cases, the use may be either with the owner's consent or over his objection. The fact of public use with consent is more than a permissive use, for it involves concession, much more than permission, which implies use upon request. Use with consent is, in effect, under a claim of right; while use over objection is high evidence of a claim of right. The interruption must be of the right, and not of the use, in order to avoid the operation of this statute. *Shellhouse* v. *State* (1887), 110 Ind. 509; *Township of Madison* v. *Gallagher* (1895), 159 Ill. 105; *Toof* v. *City of Decatur* (1885), 19 Ill. App. 204; *Hart* v. *Town of Red Cedar* (1885), 63 Wis. 634, 24 N. W. 410; *Jones* v. *Davis* (1874), 35 Wis. 376; *Bartlett* v. *Boardmore* (1890), 77 Wis. 356, 46 N. W. 494; *Kelsey* v. *Furman* (1872), 36 Iowa 614; *Webster* v. *City of Lowell* (1886), 142 Mass. 324, 8 N. E. 54.

The findings in this case are somewhat confusing, if not contradictory. It was found that appellee in opening up the west end of the way did so for his own convenience.

7. It was not so found with respect to the east end, which was opened and connected with a road which had

been open to public travel for many years prior thereto. It was found that on a number of occasions both Woodring and McCreery obstructed the way so that travel was interfered with and interrupted, but it was found that these obstructions were not placed in the way for the purpose of obstructing travel, but for the convenience of the landowners; and also that the public continued to assert the right of user, though impeded, and the inference is clear from these findings that the interruptions were of the use itself, not of the nature of denials of the right of use, but of sufferance in the public, for it was found that, except for these interruptions, the way has been fenced on both sides from end to end, and has been continually traveled and used by the public generally. It is insisted by counsel, and was evidently the view taken by the court below, that these interruptions were interruptions of the right of use; that the overt acts of placing these obstructions in the way being consistent with the use of the way as private, were sufficient to prevent the acquisition of a public right. We are not able to bring ourselves to that view. Such acts might be done on an acknowledged public highway. True, they might lead to the prosecution of the offender; and while they might impede public travel, they would, in no sense, be denials of the right of public travel, for it is the right, rather than the character of the use which is the important question.

If appellee had desired to prevent the acquisition of a public right, he was required to do more than he is found to have done. His acts, it is true, might evince some denial of the public right, but the public continued to assert its right, and this he has not denied. Had he intended to prevent the ripening of this right into an indefeasible one in the public, it would have been an easy matter to prevent it by gates, or some other appropriate obstruction at each end of the way, and by denial to, and exclusion of, the public from the right of passing that way, or by legal proceedings; but he seems to

have done neither. Rather, it seems to us, he puts himself in the equivocal situation of asserting an anomalous way, open for all purposes of the public, with the reserve right in himself, subject to the public sufferance, of interfering with travel, solely as a matter of convenience, and not as of right.

It is also urged that because, ever since the first petition was filed, appellee has been contesting the claim of the public, it cannot be said that he should do more. Appellee's objection on that ground is not tenable for two reasons: (1) Because the full twenty years' user had ripened the way into a highway, if at all, before the first petition was filed, and that fixed the status of the way; (2) because the public has continued, up to the time of trial, and for twenty years prior, to lay down fences, to open gates, and to assert the right to use the way, and also to use it—in itself a finding of adverse assertion by the public, and undenied by appellee. The fact that the way has been widened from time to time, is not a material matter, for the width at the end of the twenty years' user is the width the statute fixes as the width of a highway. *Epler* v. *Niman* (1854), 5 Ind. 459; *Hart* v. *Trustees, etc.* (1860), 15 Ind. 226.

Reliance is placed by appellee on the cases of *Shellhouse* v. *State, supra, Nowlin* v. *Whipple* (1889), 120 Ind. 596, 6 L. R. A. 159, *Null* v. *Williamson* (1906), 166 Ind. 537, *Parish* v. *Kaspare* (1887), 109 Ind. 586, *Davis* v. *Cleveland, etc., R. Co.* (1894), 140 Ind. 468, *Conner* v. *Woodfill* (1890), 126 Ind. 85, 22 Am. St. 568, *Baltimore, etc., R. Co.* v. *City of Seymour* (1900), 154 Ind. 17, *Fankboner* v. *Corder* (1891), 127 Ind. 164, and numerous other cases in this and other states involving questions of adverse use, permissive use, and purely prescriptive claims, principally apply to private controversies, and criminal prosecutions, in which all presumptions are indulged in favor of defendants. The learned counsel for appellee have as-

sembled in their brief a very valuable collection of cases on those points, but they are not of controlling influence under the findings in this case, under which appellee, in effect, has conceded the right of the public, if not invited the use. While acts of interference ought not to be ignored, and may in a particular case be of controlling influence independently of any declaration, the acts of interruption shown, evince an innocent lack of knowledge of the rights of the public upon highways, rather than a purpose to deny them, and are consistent with this view. The continuous use by the public, in the manner found, evinces an unmistakable assertion of an adverse right, and, under the facts found, the interruption of the enjoyment would materially affect the public accommodation and private rights, and the way should be declared a public highway, and recorded as such. The judgment is reversed, and the circuit court is directed to restate the conclusions of law in accordance with this opinion, and render judgment accordingly.

## On Petition for Rehearing.

Myers, J.—An able and earnest petition for a rehearing in this case has led us to a careful review of the original opinion.

The principal contention of the learned counsel for appellee is that, in order that a highway arising from user may be "ascertained, described and entered of record," it must appear that the use has been adverse, uninterrupted, and under a claim of right, in analogy to the acquisition of easements generally by prescription, and reliance is placed upon the case of *Shellhouse* v. *State* (1886), 110 Ind. 509, and like cases.

In the case just cited the question was presented as to an alleged public alley in a city, involving dedication and prescription, and it was held, and we think correctly, that a mere permissive use, where the way was closed by the owner

of the fee at night by gates or bars, evinced not only a lack of intention to dedicate, but also such interruption as prevented the establishment of a prescriptive way.

The rule is established by a long line of cases in this State, and in other states, that, to gain a way by prescription, the use must be uninterrupted for twenty years or more,

7.  but the case of *Shellhouse* v. *State, supra,* has no bearing here, for the reason that there is no jurisdiction in boards of commissioners over ways in cities; and while the highway is, in a sense, a prescriptive way, it is a statutory way, as distinguished from a common-law prescriptive way, and if, as we have seen, it is immaterial whether it is used with the consent, or over the objection, of the landowner, it must follow that the obstructions in the way, or interruptions of the use, could be no more than overt acts of objection to the use, and no more effective than declarations, and, under appellant's theory, amount to assertions against, or interruptions of, the public use, and negations of the right. But the difficulty is that the evidence is not in the record, and the findings show that these interruptions were not made, or obstructions placed in the way, for the purpose of obstructing public travel, and the public continuously asserted the right to use it, by removing the obstructions when necessary, which is certainly equivalent to a finding of an assertion against the private right of appellee. Besides it is expressly found that the public continued to use it as of right, as a public way, notwithstanding the obstructions.

Appellee contends that these obstructions and interruptions were consistent with a seasonable use of the way as private property, and therefore assertions against the public right. But if neither his consent nor his objection was material, and the public continued to use the way, these acts were immaterial. At most they were negative assertions or objections against the public right, which the findings show the public continuously asserted, and asserted contrary to the exclusive private right of appellee. The obstructions

were removed, and travel continued at will. The findings show clearly such use as public highways are usually put to, and without objection, and conversely with consent, unless the obstructions were in and of themselves objections, but that inference is overcome by the findings. If user by the public with the consent of the landowner for such a length of time that public accommodation and private rights might be materially affected by an interruption of the enjoyment is sufficient to raise a presumption that the owner intended a dedication, much more must it be true, under the findings here, that such use is shown as the statute contemplated to authorize the ascertainment of the outline of the way, as a public highway, and for the same reasons as in case of highways by dedication. *Pittsburgh, etc., R. Co.* v. *Town of Crown Point* (1898), 150 Ind. 536; *Town of Fowler* v. *Linquist* (1894), 138 Ind. 566; *Town of Marion* v. *Skillman* (1891), 127 Ind. 130, 11 L. R. A. 55; *City of Indianapolis* v. *Kingsbury* (1885), 101 Ind. 200, 51 Am. Rep. 749.

It is also claimed that the general statute with respect to the acquisition of easements (§6178 Burns 1908, §4321 R. S. 1881) should be construed with the highway statute.

10. We think counsel in error in this view, for that statute clearly refers to adverse use, while the construction given to the highway statute has been that it is immaterial whether the use is with consent or over objection, for it is not a way arising by prescription strictly, but a statutory way. The statute with respect to easements contemplates a prescriptive easement, in analogy to the common law, and consequently and necessarily the highway statute marks a distinction from prescriptive easements, because in the latter, consent or permissive use would never ripen into an easement through the want of adverse uninterrupted use. In the former we have seen that neither consent nor objection is material. Conceding that the obstructions amount to assertions of objections, they are not availing as against a finding of the continuous use by the public in total

disregard of the obstructions, and for these reasons the statute respecting the subject of easements in general cannot be controlling here, even though it applies to public easements, which we doubt, but express no opinion upon that subject.

It is also urged that the first clause of §7663 Burns 1908, Acts 1905, p. 521, §15, changes the rule as laid down by this court in the construction of former statutes, that the

9. way should be the width at the end of the twenty-year or more period, such construction beginning with *Epler* v. *Niman* (1854), 5 Ind. 459, by the language "all highways heretofore laid out according to law, or used as such for twenty years or more, shall continue as located and as of their original width, respectively, until changed according to law." If this clause can be said to refer to a case under the statute for ascertaining and recording highways, it could not change the result from the fact of a change of width within the twenty years, for the phrase "their original width," as we understand it, is the width when the proceeding is begun to ascertain and record it, and does not refer to a possibly wider or narrower way at some remote or recent period. The main question is not one of the width of the way so far as the public right is concerned, but of the existence of the way. There would be quite as much reason in holding that the width of the way should be the width of the traveled track, as the width at some remote period, when there may have been no enclosure of the way, or a mere track, or a wide way. The statute should have a reasonable construction to effectuate its intent. To fix the outlines as parties owning the land have themselves fixed them is reasonable, and attended with no hardship.

The court is keenly alive to the rights of private property, and to the preservation of those rights without unlawful invasion, but it is also confronted with a condition presented by the findings in this case, which impels the conclusion that a way by twenty years' user is shown, and that the petition for a rehearing should be, and is, therefore, overruled.